# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEAN M. MIDDLETON,

        Petitioner,

v.                                       Case Number: 04-cv-70693

THOMAS BIRKETT,

        Respondent.

_____/

## OPINION AND ORDER DENYING A PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Dean M. Middleton has filed a *pro se* habeas corpus petition under 28

U.S.C. § 2254.  He is currently incarcerated at the Kingsley Correctional Facility in

Kingsley, Michigan.  Petitioner challenges his convictions for operating a motor vehicle

while under the influence of intoxicating liquor causing the death of another ("OUIL

causing death"), involuntary manslaughter, and furnishing alcohol to a minor.  For the

reasons set forth below, the court denies the petition.

## I.  BACKGROUND

Petitioner's convictions arise from the death of Kathleen Fortin, who was a

passenger in Petitioner's vehicle when it was being driven by fifteen-year-old Stephanie

Cross.  The Michigan Court of Appeals summarized the facts leading to Petitioner's

convictions as follows:

> On the evening of September 23, 1998, [Petitioner and co-defendant
> Pedro Espinoza] entered a BP gas station in Linden, Michigan, and
> purchased a case of beer.  Stephanie Cross was at the BP station when
> defendants arrived.  She asked defendants if they were going to a party.
> Defendant Espinoza responded that there was a party in Fenton and

asked her to join them. Ms. Cross agreed to go but asked to bring her brother and his two friends because she did not know defendants. On the way to the party, defendant Espinoza gave beer to everyone in the car. Ms. Cross testified that she consumed at least one beer on the way to the party. Ms. Cross testified that she continued to receive beer from defendant Espinoza during the party. Shortly after their arrival, however, Ms. Cross' brother decided to leave the party. Defendants dropped Ms. Cross and her brother off at a friend's house and informed Ms. Cross that they would return for her later that evening. Instead of waiting for defendants, Ms. Cross walked back to the BP station with her brother. When defendants returned to the BP store and purchased another case of beer, Ms. Cross agreed to leave with them if she could drive the car. Defendant Middleton gave Ms. Cross the keys to his car. According to Ms. Cross, she had previously informed defendants that she was fifteen years old and did not have a driver's license. When Ms. Cross got into the driver's seat, her brother and the store clerk threatened to call the police. Whereupon defendant Middleton told her to hurry up and leave.

Ms. Cross proceeded to drive defendant Middleton's vehicle to Flint, which is approximately thirty minutes from Linden. Throughout this trip, Ms. Cross claimed that she continued to drink the beers offered by defendants. She explained that whenever she finished a beer, defendant Middleton would hand her another opened beer can. She testified that he would get these beers from defendant Espinoza in the back seat. While returning from Flint, defendants allowed Ms. Cross to pick up her sixteen-year-old friend, Kathleen Fortin. When Ms. Cross drove up to Ms. Fortin's home, Ms. Fortin climbed out her bedroom window and got into the backseat of the car.

Ms. Cross then took the group back to the BP station. At trial, Ms. Cross admitted that she felt drunk while driving to the gas station. The store clerk also testified that Ms. Cross appeared visibly intoxicated upon her arrival and that she was slurring her speech. When the clerk informed the group again that she was going to call the police, defendant Middleton told Ms. Cross to drive off. It was shortly thereafter that Ms. Cross approached the stop sign at the intersection of Whitaker Road and Owen Road. As Ms. Cross entered the intersection, the car she was driving was struck by another vehicle driven by Denise Jenkins-Cahill. Ms. Fortin died at the scene of the accident. Ms. Cross testified that she did not remember stopping at the intersection. An accident reconstruction expert concluded that the collision occurred because the driver of defendant Middleton's vehicle failed to yield the right of way.

Ms. Cahill acknowledged at trial that she had been drinking with some friends earlier that evening. However, she denied being intoxicated at the

time of the accident. Nevertheless, blood tests conducted shortly after the accident revealed that both Ms. Cahill and Ms. Cross had blood alcohol levels above .10 percent. Ms. Cahill was not charged with OUIL causing death and was ultimately acquitted of drunk driving. Ms. Cross was charged as a juvenile and entered into a plea agreement, under which she pled guilty to OUIL causing death in exchange for the dismissal of an involuntary manslaughter charge.

*People v. Middleton*, No. 236547, 2003 WL 21246624, *2-3 (Mich. Ct. App. May 29, 2003).

## II. PROCEDURAL HISTORY

Petitioner, along with co-defendant Pedro Alfredo Espinoza, was tried before a jury in Genesee County Circuit Court. The jury found Petitioner guilty of operating a motor vehicle while under the influence of intoxicating liquor (OUIL causing death), involuntary manslaughter, and furnishing alcohol to a minor. On July 18, 2001, he was sentenced to 60-180 months imprisonment for the OUIL causing death and involuntary manslaughter convictions, and 60 days in jail for the furnishing alcohol to a minor conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.    Where the prosecution's witness Stephanie Cross violated the court's sequestration order and colored her testimony, to rebut defendant's trial strategy, Mr. Middleton is entitled to a new trial.

II.   Defendant's convictions of: OUIL causing death and involuntary manslaughter, must be reversed where he is only guilty of permitting an intoxicated minor to drive his car (M.C.L. 257.625-8), a 90-day misdemeanor.

III.  Was there insufficient evidence as a matter of Michigan law to support Mr. Middleton's conviction of involuntary manslaughter under an aiding and abetting theory?

3

IV.     Did the trial court violate Mr. Middleton's confrontation clause rights when it refused to allow him to impeach Stephanie Cross with her juvenile adjudications, or being a run-away, etc.?

V.      Did the trial court err in assessing defendant 15 points for OV 7 where victim vulnerability was unsupported by the facts of this case?

VI.     Are the 7-1/2 to 15 year terms of imprisonment imposed in the case at bar, disproportionate to these offenses and this offender and an abuse of sentencing discretion, despite being in accord with the judicial sentencing guidelines, where Mr. Middleton is an ex-Navy officer, and a first-time offender and in light of the new statutory sentencing guidelines which are the best evidence of legislative intent regarding proportionality?

Petitioner also presented the following claim in a *pro per* supplemental brief:

The trial court erred in allowing multiple convictions for OUIL causing death and involuntary manslaughter for a single act, which violated the constitutional prohibition against double jeopardy.

The Michigan Court of Appeals affirmed the convictions and sentences, but remanded the matter to the trial court to correct the judgment of sentence which cited the incorrect statute for the offense of furnishing alcohol to a minor. *Middleton*, 2003 WL 21246624 at *8. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals and added an additional claim – conviction of involuntary manslaughter under aiding and abetting rule. The Michigan Supreme Court denied leave to appeal. *People v. Middleton*, 670 N.W.2d 673 (Mich. 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.      Where the prosecutor's witness Stephanie Cross violated the trial court's sequestration order and colored her testimony, to rebut Petitioner's trial strategy, Petitioner is entitled to a new trial under the Fifth Amendment.

4

II.   Petitioner's convictions of: A) OUIL causing death; and, B) involuntary manslaughter; must be reversed where Petitioner is only guilty of: i) permitting an intoxicated minor to drive his car, a 90-day misdemeanor under due process of law.

III.  There was insufficient evidence as a matter of federal law to support Petitioner's conviction of involuntary manslaughter under the aiding and abetting theory.

IV.   The trial court violated Petitioner's Sixth Amendment confrontation clause right when it refused to allow him to impeach Stephanie Cross with her juvenile adjudications of being a run-away, with a criminal record, etc.

V.    The 7-1/2 to 15 year terms of imprisonment imposed in the case at bar, are disproportionate to these offense and this offender and an abuse of sentencing discretion, despite being in accord with the judicial sentencing guidelines which are the best evidence of legislative intent regarding proportionality under the Eighth Amendment.

VI.   Petitioner's convictions of OUIL causing death and involuntary manslaughter for a single act in this case violates the federal constitutional prohibition against double jeopardy.

The petition contained claims which had not been exhausted in state court.

Accordingly, on March 10, 2005, the court issued its "Order Holding Petitioner's Petition for Writ of Habeas Corpus in Abeyance and Administratively Closing Case," so that Petitioner could return to state court to exhaust his unexhausted claims.

On May 18, 2005, Petitioner filed a motion for relief from judgment in the state trial court, raising the same claims raised in his original habeas petition and an additional claim that he received ineffective assistance of trial and appellate counsel. The trial court denied the motion. *People v. Middleton*, No. 99-004755 (Genesee County Circuit Court Aug. 1, 2005).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I. Where the prosecutor's witness Stephanie Cross violated the trial court's sequestration order and colored her testimony, to rebut defendant-appellant's trial strategy, defendant-appellant is entitled to a new trial under the Fifth Amendment.

II. Defendant-appellant's convictions of A) OUIL causing death; and B) involuntary manslaugther must be revsred where defendant-appellant is only guilty of: 1) permitting an intovicated minor to drive his car, a 90 day misdemeanor under due process of law.

III. There was insufficient evidence as a matter of federal law to support defendant-appellant's conviction of involuntary manslaughter under an aiding and abetting theory.

IV. The trial court violated defendant-appellant's Sixth Amendment confrontation clause right when it refused to allow him to impeach Stephanie Cross with her juvenile adjudications of being a runaway with a criminal record.

V. The 7-1/2 to 15 year term of imprisonment imposed in the case at bar are disproportionate to these offenses and this offender and an abuse of sentencing discretion, despite being in accord with the judicial sentencing guidelines which are the best evidence of the legislative intent regarding proportionality under the Eighth Amendment.

VI. Defendant-appellant's convictions of OUIL causing death and involuntary manslaughter for a single act in this case violates the federal constitutional prohibition against double jeopardy.

VII. Defendant-appellant was denied the effective assistance of trial and appellate counsel.

The Michigan Court of Appeals denied leave to appeal. *People v. Middleton*, No. 266246 (Mich. Ct. App. May 17, 2006). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the following claims:

I. Where the prosecutor's witness Stephanie Cross violated the trial court's sequestration order and colored her testimony, to rebut defendant-appellant's trial strategy, defendant-appellant is entitled to a new trial under the Fifth Amendment.

II. Defendant-appellant's convictions of A) OUIL causing death; and B) involuntary manslaughter must be reversed where defendant-appellant is

only guilty of: 1) permitting an intoxicated minor to drive his car, a 90 day misdemeanor under due process of law.

III.     There was insufficient evidence as a matter of federal law to support defendant-appellant's conviction of involuntary manslaughter under an aiding and abetting theory.

IV.     The trial court violated defendant-appellant's Sixth Amendment confrontation clause right when it refused to allow him to impeach Stephanie Cross with her juvenile adjudications of being a runaway with a criminal record.

V.     Defendant-appellant was denied the effective assistance of trial counsel.

The Michigan Supreme Court denied leave to appeal.  *People v. Middleton*, 722 N.W.2d 862 (Mich. 2006).  Thereafter, Petitioner filed a motion to lift the stay in this court, which was granted.  Now before the court are the six grounds for habeas relief raised in Petitioner's formerly-stayed habeas petition.

## III.  STANDARD

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Id.* at 410 (emphasis in original).  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 410-11.  Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409.  "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence."  *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

Further, where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision.  *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000).  This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 943.  However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result

8

is not in keeping with the strictures of the [Antiterrorism and Effective Death Penalty Act]." *Id.*

## IV.  DISCUSSION

### A.  Violation of Trial Court's Sequestration Order

Petitioner argues that the trial court erred in failing to order a mistrial or to give a cautionary jury instruction when prosecution witness Stephanie Cross violated the trial court's sequestration order.  Just prior to Cross's testimony, several motions were presented and argued to the trial court.  Cross was present during the arguments. Petitioner argues that, because the defense's theory of the case was outlined during these arguments, Cross should not have been permitted to testify after hearing the arguments.  Petitioner argued that hearing the defense theory of the case allowed Cross to "color her testimony" and, therefore, prejudiced Petitioner.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held, in relevant part:

> A sequestration order serves to prevent witnesses from coloring their testimony in relation to the testimony of other witnesses. . . . To obtain appellate relief for a sequestration order violation, a defendant must demonstrate prejudice. . . . It is undisputed that Ms. Cross was present during arguments regarding the scope of defendants' cross-examination in violation of the trial court's sequestration order.  Defendants claim that they were prejudiced by Ms. Cross' presence because she was able to shade her testimony according to the theories put forth in the arguments. However, defendants have failed to identify any portion of Ms. Cross' testimony that was altered or inconsistent with her preliminary examination testimony.  Absent any evidence to support defendants' claims that Ms. Cross altered her testimony, the trial court properly denied their request for a jury instruction concerning the violation.

*Middleton*, 2003 WL 21246624 at *3.

While sequestration of witnesses "is a long-established and well-recognized measure designed to increase the likelihood that testimony will be candid," it is not required by the Due Process Clause. *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988). It is within a trial court's discretion whether to admit or exclude the testimony of a witness who has violated a sequestration order. *Burks v. Okla. Pub. Co.,* 81 F.3d 975, 980 (10th Cir. 1996). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994), citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Striking a witness's testimony for the violation of a sequestration order is a "serious sanction" and appropriate only where a defendant has "suffered actual prejudice." *Lewis v. Bell*, No. 05-CV-74202-DT, 2006 WL 4557166, * 27 (E.D. Mich. Aug. 31, 2006), *citing United States v. Jiminez*, 780 F.2d 975, 981 (11th Cir. 1986).

As noted by the Michigan Court of Appeals, there is no evidence that Cross's violation of the sequestration order had any impact on her trial testimony. Petitioner cannot establish that he suffered actual prejudice or that the admission of Cross's testimony resulted in a denial of fundamental fairness. Therefore, Petitioner has not shown that the trial court's decision to admit Cross's testimony was so egregious as to violate his rights under the Due Process Clause.

In addition, a jury instruction error warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due

10

process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) *(quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (*quoting Cupp,* 414 U.S. at 147). The Michigan Court of Appeals held that the trial court did not err in failing to give an instruction regarding the sequestration order. Petitioner has failed to show that the failure to give an adverse inference instruction so infected the entire trial as to violate due process. Therefore, habeas relief is denied on this claim.

### B. Sufficiency of the Evidence

In his second and third claims for habeas corpus relief, Petitioner argues that insufficient evidence was presented to sustain his OUIL causing death and involuntary manslaughter convictions.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. §

2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 518 U.S. 1027

(1996).

The Michigan Court of Appeals held that sufficient evidence was presented to

sustain Petitioner's involuntary manslaughter conviction.  The court of appeals stated, in

relevant part:

> In reviewing a sufficiency of the evidence claim, we view the evidence in
> the light most favorable to the prosecution and determine whether a
> rational trier of fact could find that the essential elements of the crime were
> proven beyond a reasonable doubt.  *People v. Johnson,* 460 Mich. App.
> 101, 122; 631 N.W.2d 67 (2001). . . .
>
> Involuntary manslaughter is defined as the killing of another without malice
> and unintentionally, but in doing some unlawful act not amounting to a
> felony nor naturally tending to cause death or great bodily harm, or in
> negligently doing some act lawful in itself, or by the negligent omission to
> perform a legal duty.  A person who aids or abets in the commission of a
> crime may be convicted and punished as if he directly committed the
> offense.  A defendant may be convicted as an aider and abettor if: (1) the
> defendant or some other person committed the charged crime; (2) the
> defendant assisted in the commission of the crime by performing acts or
> offering encouragement; and (3) the defendant either intended the
> commission of the crime or knew that the principal had such an intent
> when he offered aid and encouragement.
>
> There is record evidence that defendants provided Ms. Cross with beer
> throughout the evening.  Despite this fact, defendant Middleton allowed
> Ms. Cross to drive his car.  There was also testimony that defendants
> knew Ms. Cross was only fifteen years old and that she did not have a
> learner's permit or a driver's license.  The record further reveals that Ms.
> Cross appeared visibly intoxicated when defendant Middleton told her to
> drive away from the BP station shortly before she collided with Ms. Cahill's
> vehicle. . . . On this record, a rational trier of fact could have concluded
> that defendants encouraged and contributed to Cross' driving in an
> intoxicated state, which played a role in the ultimate commission of
> involuntary manslaughter.
>
> Nevertheless, defendants assert that they could not be criminally liable in
> this case because the death was actually and proximately caused by an
> intervening intentional act of a third person.  Specifically, defendants note
> that Ms. Cahill was driving while intoxicated and in excess of the speed

limit when she ran into their car.  In this regard, defendant Middleton, citing *People v Zak*, alleges that a person cannot negligently or recklessly aid and abet a murder.  However, defendant Middleton's reliance on *Zak, supra*, is misplaced.  In *Zak, supra* at 9, this Court ultimately concluded that the theory of involuntary manslaughter failed due to a lack of causation between the negligent acts and the homicide.  In the present case, there is sufficient evidence from which a jury could conclude that defendants' conduct was a cause of Ms. Fortin's death.  Indeed, an expert who examined the scene opined that it was defendant Middleton's vehicle that failed to yield the right of way.  In *People v Baily*, the Supreme Court of Michigan held:

> [i]n assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm.  The criminal law does not require that there be but one proximate cause of harm found. . . .

Because there was evidence that Ms. Cahill's conduct was not the sole cause of the accident that resulted in the victim's death, a reasonable finder of fact could find that defendants' actions were substantial contributing factors to the accident.

*Middleton*, 2003 WL 21246624 at *3-5 (internal quotation omitted).

The Michigan Court of Appeals, although not citing *Jackson*, cited case law which clearly incorporated the *Jackson* standard.  Petitioner has not presented any evidence to show that the state court's findings of fact were erroneous.  Therefore, according the state court's findings of fact a presumption of correctness, this court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty of involuntary manslaughter did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

Next, Petitioner argues that insufficient evidence was presented to sustain his conviction for OUIL causing death. To prove the offense of OUIL causing death, a prosecutor must establish beyond a reasonable doubt that: (1) the defendant operated a motor vehicle while intoxicated; (2) the defendant voluntarily decided to drive, knowing that he or she had consumed alcohol and might be intoxicated; and (3) the defendant's operation of the vehicle caused the victim's death. *People v. Schaefer*, 703 N.W.2d 774, 784 (Mich. 2005), *overruled on other grounds by People v. Derror*, 715 N.W.2d 822 (Mich. 2006). Petitioner was charged with OUIL causing death as an aider and abettor.

The Michigan Court of Appeals held that the evidence presented was sufficient to sustain Petitioner's conviction. The court of appeals noted that the evidence showed that Petitioner gave Cross alcoholic beverages while she was driving, that he permitted her to drive his vehicle despite the fact that she was visibly intoxicated, and that her operation of the motor vehicle caused Fortin's death. According the state court's findings of fact a presumption of correctness, this court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty of OUIL causing death was not contrary to or an unreasonable application of *Jackson*, and denies habeas relief on this claim.

### C. Constitutionality of OUIL Statute

Petitioner also argues that the offense of operating a motor vehicle while under the influence of intoxicating liquor causing the death of another person, Mich. Comp. Laws § 257.625(4), is unconstitutional for vagueness and because it establishes a strict liability crime.

The Due Process Clause "prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Maynard v. Cartwright*, 423 U.S. 48, 49 (1988), *quoting Unites States v. Harris*, 347 U.S. 612, 617 (1954).  The Due Process Clause "requires . . . that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Id.*

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  The Supreme Court has stated:

> The root of the vagueness doctrine is a rough idea of fairness.  It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky*, 407 U.S. 104, 110 (1972).

The statute challenged by Petitioner provides adequate notice of what conduct is prohibited.  The statute clearly and unambiguously prohibits a person from driving a motor vehicle after drinking to the point of intoxication.  *Accord David v. Birkett*, No. 05-cv-71519, 2008 WL 4822019 (E.D. Mich. Nov. 4, 2008).

In addition, Petitioner argues that the statute is unconstitutional because it establishes a strict liability crime.  The Michigan Supreme Court has held that OUIL causing death is not a strict liability crime.  *People v. Lardie*, 551 N.W.2d 656, 660 n.10 (1996), *overruled on other grounds by Schaefer*, 703 N.W.2d at 784.  "[F]ederal courts

must accept a state court's interpretation of its statutes." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001). Therefore, because the Michigan Supreme Court has held that OUIL causing death is not a strict liability crime, this court need not decide whether this statute would be unconstitutional if it established a strict liability crime.

## D. Confrontation Clause

Petitioner argues that the trial court violated his right of confrontation when it limited his cross-examination of Stephanie Cross. Petitioner sought to cross-examine Cross regarding her runaway status and some prior juvenile adjudications in Tennessee. Petitioner's attorney argued that this testimony was necessary to respond to the prosecution's attempts to portray Cross as a naive and innocent girl who was led into illegal behavior by Petitioner. The trial court held that information regarding whether Cross was a runaway was irrelevant. The trial court further held that defense counsel could inquire specifically whether Cross had been convicted of any crime relating to theft or dishonesty, but not whether she had generally been convicted of any crime.

The Sixth Amendment to the Constitution guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him." "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.*, at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall

come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, *quoting Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965).

In determining whether the exclusion of evidence or restrictions on cross-examination infringe upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska*, 415 U.S. 300, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *quoting California v. Trombetta*, 467 U.S. 479, 485 (1984). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-691 (1984), *quoting United States v. Cronic*, 466 U.S. 648, 656 (1984).

The Michigan Court of Appeals held that the limitations placed upon Petitioner's ability to cross-examine Cross were reasonable and in conformity with Michigan law. The Michigan Court of Appeals reasoned:

> A defendant has a constitutional right to present a defense and confront his accusers. U.S. Const., Am. VI; Const. 1963, art. 1 § 20; *People v. Adamski*, 198 Mich. App. 133, 138; 497 N.W.2d 546 (1993). However, "[t]he right of cross-examination does not include a right to cross-examine on irrelevant issues and may bow to accommodate other legitimate interests of the trial process or of society." *Adamski, supra* at 138. In the instant case, the trial court refused defendants' requests to question Ms. Cross regarding her prior juvenile adjudications and her alleged runaway status. According to defendants, this evidence was necessary to rebut the prosecution's portrayal of Ms. Cross as "some innocent little girl that [was] duped into drinking this alcohol and driving a vehicle." However, the trial court ruled the evidence inadmissible because defendants failed to show that it was sufficiently relevant to their argument.

It appears that Ms. Cross' status as a runaway from the Tennessee adjudication system would arguably tend to make it more likely that she was not a young naive girl who defendants took advantage of on the night in question. *See* MRE 401. Nevertheless, defendants have failed to demonstrate that their substantial rights were prejudiced by the trial court's refusal to admit this evidence. Indeed, Ms. Cross acknowledged that she was not forced to drink. She further admitted that it was her idea to drive defendant Middleton's vehicle, despite her awareness that it was illegal. Ms. Cross also claimed that she had driven on at least ten prior occasions and she admitted that she was a "wild child." On this record, defendants have failed to establish that their substantial rights were affected by the trial court's decision.

*Middleton*, 2003 WL 21246624 at *6.

Having reviewed the transcript, the court finds that Petitioner had many opportunities to present evidence regarding Cross's relative maturity and naivete. Cross herself testified that she was a wild child and admitted that the idea to drive Petitioner's car originated with her. The trial court's restrictions on the cross-examination of Cross were reasonable. The restrictions were sufficiently lenient to allow evidence of Cross's behavior to be introduced. Petitioner was not denied his right to present a meaningful defense by the court's imposition of these reasonable restrictions. Therefore, the court finds that the court of appeals' decision was not contrary to or an unreasonable application of Supreme Court precedent.

### E. Sentencing Claim

Next, Petitioner claims that his sentences violate the Eight Amendment's ban on cruel and unusual punishment. There exists no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957 (1997). However, the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." *Id.* at 995. The Sixth Circuit has held that "a sentence within the statutory

maximum set by statute generally does not constitute 'cruel and unusual punishment'."
*United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that, generally, a sentence within statutory limitations does not violate the Eighth Amendment); *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted).

The statutory maximums for OUIL causing death and involuntary manslaughter are fifteen years. Mich. Comp. Laws § 257.625(4); § 750.321. Petitioner was sentenced within the statutory maximum. Accordingly, he fails to prove an Eighth Amendment violation under which he would be entitled to habeas corpus relief.

### F. Double Jeopardy Claim

Petitioner argues that his rights under the Double Jeopardy Clause were violated when he was convicted for both OUIL causing death and involuntary manslaughter arising from the same incident.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense.[1] *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Because the substantive power to prescribe crimes and determine

---

[1] The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fifth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes prescribe the 'same' conduct, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In determining whether the Michigan legislature intended to authorize cumulative punishments in the circumstances presented here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986); *see also McCloud v. Deppisch*, 409 F.3d 869, 874 (7th Cir. 2005) (holding that a federal court is "bound by" state court's interpretation of legislative intent).

Michigan courts have found that the legislature specifically intended cumulative punishment under both involuntary manslaughter and OUIL causing death. *See People v. Kulpinski*, 620 N.W.2d 537, 542 (Mich. Ct. App. 2000) ("The Legislature's intent was to permit the imposition of separate convictions and punishments for both involuntary manslaughter and OUIL causing death."). "[T]he societal norm that the OUIL causing death statute seeks to address – intoxicated driving – is different from the societal norm addressed by the crime of involuntary manslaughter, which conceivably encompasses a wide variety of behaviors constituting gross negligence and has no such intoxication requirement at all." *Id.* at 544.

Accepting the state court's interpretation of legislative intent, the court finds that the Michigan Court of Appeals' decision in this case that the punishments did not violate double jeopardy was not contrary to or an unreasonable application of Supreme Court precedent.

## G.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination.  *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).  In denying the habeas petition, the court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA.  *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).   In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any  claims upon which habeas relief may be granted.  Therefore, the court will deny a certificate of appealability.

## V.  CONCLUSION

Accordingly, IT IS ORDERED that the petition for writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 21, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 21, 2008, by electronic and/or ordinary mail.


s/Lisa G. Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522